UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THE SWEETWATER
COALITION OF VOLUSIA
COUNTY INC.,

               **Plaintiff,**

v.                                **Case No: 6:25-cv-1695-PGB-LHP**

JARED PERDUE and
BRANDON BOWMAN,

               **Defendants.**
_____/

## ORDER

This cause is before the Court on Plaintiff The Sweetwater Coalition of Volusia County Inc.'s ("**Plaintiff**") Second Amended Motion for Preliminary Injunction (Doc. 44 (the "**Motion**")) and Defendant Secretary of the Florida Department of Transportation Jared Perdue ("**FDOT**") and District Engineer of the Army Corps of Engineers Brandon Bowman ("**ACOE**") (collectively, the "**Defendants**") responses thereto (Docs. 52, 53 (collectively, the "**Responses**")). After consideration of the parties' briefing, the Motion is due to be denied.

## I.    BACKGROUND

This dispute flows from the construction of a federally funded "interchange at the existing overpass-crossing" between Pioneer Trail Road and Interstate 95 in New Smyrna Beach, Florida (hereinafter, the "**Project**"). (Doc. 39-1, p. 2). In sum, the Project will "incorporate new entry and exit access ramps, construct additional

stormwater management facilities to treat additional runoff, and expand a section of Pioneer Trail to incorporate new entry and exit access ramps." (*Id.*).



(*Id.* at p. 10).

On December 14, 2014, the Federal Highway Administration transferred its various federal statutory environmental review obligations to FDOT. (*See* Doc. 39-10). This included transfer of its review requirements under the National

Environmental Policy Act ("**NEPA**"), the Clean Water Act ("**CWA**"), and each statute's respective implementing regulations. (*Id.*).

FDOT, standing in the shoes of the Federal Highway Administration, identified four distinct rationales for this Project: 1) to reduce congestion at adjacent interchanges, 2) to bolster regional mobility, 3) to improve emergency evacuation routes, and 4) to support existing economic developments. (Doc. 52-3, pp. 1–2).

### A. Statutory Frameworks

Plaintiff brings this action for declaratory and injunctive relief under the Administrative Procedure Act ("**APA**"), alleging that FDOT and ACOE failed to comply with the procedural requirements of the CWA and NEPA.

### i. *National Environmental Policy Act*

Congress enacted NEPA to "declare a national policy which will encourage productive and enjoyable harmony between man and his environment" and to "promote efforts which will prevent or eliminate damage to the environment and biosphere . . . ." 42 U.S.C. § 4321. To this end, NEPA "is a purely procedural statute that, as relevant here, simply requires an agency to prepare an [environmental impact statement]—in essence, a report." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 173 (2025). However, certain projects are categorically excluded from NEPA's environmental impact statement requirement. Such exempted projects include those that ***do not***:

> a) Induce significant impacts to planned growth or land use for the area;

3

b) Require the relocation of significant numbers of people;
c) Have a significant impact on any natural, cultural, recreational, historic or other resource;
d) Involve significant air, noise, or water quality impacts;
e) Have significant impacts on travel patterns; or do not otherwise have any significant environmental impacts.

23 C.F.R. § 771.117.

"Documentation of reliance on a categorical exclusion need not be detailed or lengthy," rather, the agency must only have "considered whether or not a categorical exclusion applied and concluded that it did." *Wilderness Watch & Pub. Emps. for Env't Resp. v. Mainella*, 375 F.3d 1085, 1095 (11th Cir. 2004*); see also Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*, No. 24-14171, 2025 WL 2954093, at *3 (11th Cir. Oct. 20, 2025). In fact, "a short statement that a categorical exclusion has been invoked will suffice to assure a reviewing court that environmental effects have been considered." *Wilderness Watch*, 375 F.3d at 1095. Importantly, "courts must conduct their review with significant deference to the agency. When reviewing compliance with NEPA, courts are to play only a limited role." *Seven Cnty.*, 605 U.S. at 179 n.2 (quotations omitted).

ii.    *Clean Water Act*

Under the CWA, "the discharge of any pollutant by any person [into the waters of the United States] shall be unlawful" unless done so with a permit from the ACOE. 33 U.S.C. § 1311. Accordingly, FDOT was unable to discharge any dredged or excavated material produced as a byproduct of the Project without first obtaining a permit from ACOE. The "waters of the United States" include "special

aquatic sites" as defined by the CWA's implementing regulations. *See* 40 C.F.R. § 230.10(a)(3).[1] Specifically, the relevant implementing regulations provide that:

> (a) [N]o discharge of dredged or fill material shall be permitted if there is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences.
>
>> (3) Where the activity associated with a discharge which is proposed for a special aquatic site (as defined in subpart E) does not require access or proximity to or siting within the special aquatic site in question to fulfill its basic purpose (i.e., is not "water dependent"), practicable alternatives that do not involve special aquatic sites are presumed to be available, unless clearly demonstrated otherwise. In addition, where a discharge is proposed for a special aquatic site, all practicable alternatives to the proposed discharge which do not involve a discharge into a special aquatic site are presumed to have less adverse impact on the aquatic ecosystem, unless clearly demonstrated otherwise.

40 C.F.R. § 230.10 (emphasis added)

As part of the permitting process, ACOE must conduct a "public interest review, which mandates the [ACOE] to consider "the probable impacts, including cumulative impacts, of the proposed activity and its intended use on the public interest." 33 C.F.R. § 320.4(a). The ACOE has a particular and distinct duty to protect wetlands. *See* 33 C.F.R. § 320.4(b)(4) ("No permit will be granted which involves the alteration of wetlands identified as important . . . unless the district

---

[1]    ACOE concedes that the project site is a "special aquatic site". (*See* Doc. 39-5, p. 35).

engineer concludes, on the basis of the [public interest review] that the benefits of the proposed alteration outweigh the damages to the wetlands resource.").

### iii.    *Administrative Procedure Act*

Because NEPA does not provide a private cause of action, Plaintiffs bring their challenge pursuant to the APA. *Ctr. for a Sustainable Coast*, 100 F.4th at 1355 n.2. As a result, Plaintiff's cause of action arises from 5 U.S.C. § 706(2)(A), which permits courts to set aside final agency actions, findings, or conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Lowman v. Fed. Aviation Admin.*, 83 F.4th 1345, 1357 n.12 (11th Cir. 2023) ("NEPA challenges are brought under the [APA].").

While the CWA does permit a private cause of action, Plaintiff does not bring a CWA cause of action.[2] Instead, Plaintiff challenges ACOE's decision to issue a permit for the Project as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 706(2)(A).

### B.    **Project Approval Chronology**

On December 14, 2016, the Federal Highway Administration delegated its environmental review requirements under NEPA to FDOT. (*See* Doc. 39-10). Thereafter, FDOT classified the Project as a "categorical exclusion" following studies on wildlife, natural resources, cultural resources, public involvement, and

---

[2]    "To establish a [Clean Water Act] violation, the plaintiffs must prove that (1) there has been a discharge; (2) of a pollutant; (3) into waters of the United States; (4) from a point source; (5) without a . . . permit." *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 146 F.4th 1080, 1088 (11th Cir. 2025) (quotations omitted).

other required reviews. (*See* Doc. 39-14). Subsequently, on February 26, 2021, FDOT published its Notice of Final Federal Agency Action for the Project, giving a deadline of July 26, 2021, for challengers to seek judicial review. (Doc. 39-13). Then, on November 9, 2021, FDOT issued a re-evaluation form to contemplate any changes to its previous categorical exclusion determination. (Doc. 39-2). Soon thereafter, Plaintiff challenged this process in a series of proceedings before the Florida Division of Administrative Hearings. (*See* Doc. 53-2).

After conducting a required public interest review, the ACOE determined that the Project satisfied the requirements of the CWA. (Doc. 39-3, p. 5). Subsequently, on August 5, 2025 the ACOE issued FDOT a permit to begin dredging and excavation. (Doc. 39-1). Construction began soon thereafter and remains ongoing.

In response, Plaintiffs brought this action for declaratory and injunctive relief on September 3, 2025. (Docs. 1, 2). After the Court dismissed Plaintiff's complaint and first motion for preliminary injunction for procedural deficiencies, Plaintiff filed the operative complaint (Doc 39, "**Amended Complaint**") on October 6, 2025 and the instant motion on October 10, 2025. (Docs. 29, 39, 44). The Amended Complaint asserts four counts: [3]

I.  Count I asserts that FDOT improperly designated the Project as a categorical exclusion under NEPA;

---

[3]  Importantly, each count is brought pursuant to the APA.

II.    Count II asserts that FDOT and the ACOE violated NEPA by failing to complete a "timely and unified" federal review of the Project;

III.    Count III asserts that the ACOE violated NEPA by failing to properly review the Project and failed to prepare an environmental impact statement;

IV.    Count IV asserts that the ACOE violated the CWA by failing to consider "off-site alternative" locations for the Project.

(Doc. 39, ¶¶ 53, 68, 78, 86).

In the Motion, Plaintiff moves to enjoin FDOT and ACOE from "land clearing, pre-construction, and construction activities on the site of the Pioneer Trail/I-96 Interchange." (Doc. 44, p. 1).

## II.    STANDARD OF REVIEW

The grant or denial of a preliminary injunction rests in the discretion of the district court. *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).[4] The district court, however, does not have unbridled discretion and must exercise that discretion in light of the "four prerequisites for the extraordinary relief of preliminary injunction." *Id.* (internal quotation marks omitted). To obtain a preliminary injunction, Plaintiff, as the movant, must establish: (1) a substantial likelihood of success on the merits of the underlying

---

[4]    The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

case; (2) irreparable injury in the absence of the proposed preliminary injunction; (3) the threatened injury to the movant exceeds the damage that the preliminary injunction may cause the opposing party; and (4) the preliminary injunction would not disserve the public interest. *Swain v. Junior*, 961 F.3d 1276, 1284–85 (11th Cir. 2020). Ultimately, "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to *each* of the four prerequisites" and, as such, granting a preliminary injunction should be "the exception rather than the rule." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (per curiam) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)) (emphasis added).[5]

## III.   DISCUSSION

The Court denies the Motion because Plaintiff does not establish a substantial likelihood of success on the merits as to any of their four asserted causes of action. The Court will address each in turn.[6]

---

[5]   A district court's findings made on an application for preliminary injunction are not controlling at a later hearing. *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 n.21 (11th Cir. 1983).

[6]   FDOT's brief also raises two additional defenses, separate from the merits of Plaintiff's causes of action.

FDOT first argues that Plaintiff's claims are time barred. (Doc. 53, p. 4). FDOT also raises this argument in its motion to dismiss. (*See* Doc. 58, p. 3). While the Court will more fulsomely address this issue in the motion to dismiss, it appears to be a close call. Relevant for the purposes of the preliminary injunction motion, this uncertainty weighs against Plaintiff's chances of demonstrating a substantial likelihood of success on the merits.

**A.    Counts I & III: NEPA Categorical Exclusion Determination and "Hard Look" Analysis**

To warrant a preliminary injunction premised on Counts I and III, Plaintiff was required to demonstrate a substantial likelihood of proving that FDOT's decision to classify the Project as a categorical exclusion was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Lowman*, 83 F.4th at 1357 n.12. Plaintiff has not done so.

NEPA "does not require the agency to weigh environmental consequences in any particular way." *Seven Cnty.*, 605 U.S. at 173. Rather, the agency may "weigh environmental consequences as the agency reasonably sees fit under its governing statute and any relevant substantive environmental laws." *Id.* "[T]he central principle of judicial review in NEPA cases is deference." *Id.* at 179; *see also Friends of Bell Smith Springs v. United States Forest Serv.*, No. 3:25-CV-01377-NJR, 2025

---

Moreover, FDOT argues that collateral estoppel prohibits Plaintiff from relitigating the question of "environmental impacts." (*See* Doc. 53, p. 7). As FDOT explains, Plaintiff challenged FDOT's receipt of an Environmental Resource Permit from the St. John's River Water Management District. In the course of that challenge, the Florida Division of Administrative Hearings determined that the project would lead to only negligible environmental impacts. (*See* Doc. 53-3). The Court is skeptical of this argument for two reasons, both of which stem from the sparse briefing on this issue. First, this issue is entirely unbriefed by Plaintiff, as FDOT raised it in their response in opposition to the motion for preliminary injunction. Importantly, FDOT does not renew this argument in its motion to dismiss. (*See* Doc. 58). As a result, the Court cannot confidently evaluate the merits of this argument. Second, the Court doubts that a state administrative adjudication, made while reviewing a locality's permit decision, can preclude federal consideration of the same alleged environmental impacts when reviewing a distinct permit issued under federal law. The assertion of non-mutual defensive issue preclusion is a difficult thing for a litigant to achieve, notwithstanding the multijurisdictional regulatory complexities of this case. While FDOT's argument may ultimately be meritorious, their brief merely cites generic collateral estoppel precedent. (*See* Doc. 53, pp. 7–9). Accordingly, without more complete briefing, the Court does not find this argument persuasive at this juncture.

WL 2623522, at *4 (S.D. Ill. Sept. 11, 2025) (citing the Supreme Court's opinion in *Seven Cnty.* to determine that wide deference was owed to agency's application of a NEPA categorical exclusion).

For an agency's classification of a project as a categorical exclusion to survive APA review, an agency must "indicate to a reviewing court that the agency indeed considered whether or not a categorical exclusion applied and concluded that it did." *Wilderness WatchMainella*, 375 F.3d at 1095. "In most instances, a short statement that a categorical exclusion has been invoked will suffice to assure a reviewing court that environmental effects have been considered." *Id.* Instead, categorical exclusion contravenes the APA only when the record demonstrates that the agency failed to consider the environmental consequences. *See id.* at 1095 n.10 (quoting *Edmonds Inst. v. Babbitt,* 42 F. Supp. 2d 1, 18 n. 11 (D.D.C. 1999)) ("[A] *post hoc* assertion of a [categorical exclusion] during litigation, unsupported by any evidence in the administrative record" does not satisfy arbitrary and capricious review); *see Hamrick v. Gen. Servs. Admin.*, 107 F. Supp. 3d 910, 925 (C.D. Ill. 2015) (finding that an agency that invoked a categorical exclusion that did not consider "the possibility of *any* environmental consequences" acted arbitrarily and capriciously). Thus, it is Plaintiff's burden to demonstrate that neither FDOT nor ACOE considered the environmental impacts of the Project prior to applying a categorical exclusion.

To this end, Plaintiff first argues that the project will "induce significant impacts to planned growth or land use for the area." (Doc. 44, p. 10 (quotations

omitted)); 23 C.F.R. § 771.117(a). Plaintiff argues that FDOT explicitly sought to induce growth, as Plaintiff cites the following project description provided by FDOT: "The proposed I-95 interchange at Pioneer Trail is intended to reduced traffic congestion, enhance regional mobility, and provide a viable alternative for emergency evacuations for this area in southern Volusia County." (Doc. 44, p. 10 (citing Doc. 39-15, p. 243)).

However, as FDOT notes, "growth in the geographic area is occurring prior to and independent of the interchange . . . induced growth will not be an indirect result of the proposed project." (Doc. 53, p. 12 (quoting Doc. 39-5, p. 34)). Thus, during its review process, FDOT distinguished between *supporting* existing growth and *inducing* new growth. As a result, FDOT determined that the project will not induce new growth.

Next, Plaintiff asserts that the ACOE made findings that the "water quality will be impacted by the interchange, an impact identified . . . as a disqualifier for a [categorical exclusion]." (Doc. 44, p. 10). Notwithstanding that only "*significant* . . . water quality impacts*" are disqualified from categorical exclusion, Plaintiff also recognizes that the ACOE determined that "most of the impacts to water quality will be short term, and the long-term impacts 'minor.'" 23 C.F.R. § 771.117(a) (emphasis added); (Doc. 44, p. 11 (citing Doc. 39-5, p. 21)). Here, Plaintiff demonstrates that the ACOE considered the relevant impacts to water quality, determining that such effects would not be "significant." Without any sort of

showing as to why or how this determination was improperly derived, Plaintiff has
not carried its burden to show that the ACOE acted arbitrarily or capriciously.

Similarly, Plaintiff argues that the Project will have significant impacts on
travel patterns. (Doc. 44, p. 11). Plaintiff points to the Justification Report, which
notes that the Project will reduce traffic at adjacent interchanges, change
evacuation routes, and streamline regional travel. (*See* Doc. 39-15, pp. 3–4).
Plaintiff then simply asserts that these anticipated impacts constitute "significant
impacts on travel patterns" without any further argument. This conclusory
assertion, again without any other authority, is insufficient to demonstrate that
FDOT or the ACOE acted arbitrarily or capriciously.

Finally, Plaintiff points to a vacated district court opinion authored by the
undersigned for the proposition that an overpass generally cannot be classified as
a categorical exclusion. (Doc. 44, p. 15 (citing *RB Jai Alai, LLC v. Sec'y of Fla. Dep't
of Transp.*, 112 F. Supp. 3d 1301 (M.D. Fla. 2015), *vacated, Rb Jai Alai, LLC v.
Sec'y of the Fla. Dep't of Transp.*, No. 6:13-CV1167-ORL40GJK, 2016 WL 3369259
(M.D. Fla. Feb. 2, 2016)). In *Jai Alai*, this Court held that the construction of "a
new, four-lane elevated overpass" required an Environmental Assessment or
Environmental Impact Statement. 112 F. Supp. 3d at 1322. However, *Jai Alai* is
inapposite to the instant case for several reasons. First, the opinion was vacated.
*See United States v. Ellis*, 419 F.3d 1189, 1192 (11th Cir. 2005) ("[V]acated opinions
. . . have no remaining force and cannot be considered to express the view of [the]
Court." (citations omitted)). Next, the *Jai Alai* defendants "deferred the site-

specific analysis . . . explaining that [some environmental impacts would] be investigated further prior to construction and any necessary cleanup plans [would] be developed" *after* applying a categorical exclusion to the overpass project (*See* No. 6:13-cv-01167-PGB-G_K (Doc. 103, p. 15)). In the instant case, Plaintiffs have made no similar showing that FDOT or ACOE failed to properly consider the environmental impacts of the Project prior to invoking a categorical exclusion. Further, Plaintiff asserts that *Jai Alai* is "existing precedent in the Middle District of Florida." (Doc. 44, p. 11). It is not.

Accordingly, Plaintiff has failed to carry its burden to show it has a substantial likelihood on the merits.

### B.    Count II: NEPA "Timely and Unified Federal Review"

In Count II, Plaintiff asserts that NEPA requires FDOT and the ACOE to 1) evaluate the proposal in a single document, and 2) delineate a single agency as the "lead" agency. (Doc. 44, pp. 17 –18 (citing 42 U.S.C. § 4334a(a)-(b))). However, 42 U.S.C. § 4334a(a)–(b) was added in the Fiscal Responsibility Act of 2023, approximately two years after FDOT made its categorical exclusion determination. Pub. L. 118-5, Div. C, Tit. III, § 321, 137 Stat. 38–39 (June 3, 2023). Plaintiff simply cites the statute without argument as to why it ought to apply retroactively. *See Vartelas v. Holder*, 566 U.S. 257, 266 (2012) ("[T]he principle against retroactive legislation [counsels] courts [to] read laws as prospective in application unless Congress has unambiguously instructed retroactivity."). Accordingly, Plaintiff has not demonstrated a substantial likelihood of succeeding on Count II.

### C.    Count IV: The CWA

Finally, Plaintiff argues that the ACOE violated the CWA and APA by failing to consider "off-site alternatives" to the Project location, as is required in projects involving "special aquatic sites." (*See* Doc. 44, p. 18). The ACOE failed to consider off-site alternatives because "[t]here are no other existing crossroads . . . that would meet spacing requirements for a new interchange." (Doc. 39-5, p. 16). Plaintiff does not dispute this fact in the record. Because a major portion of the Project's purpose was to reduce congestion at adjacent interchanges, and no other crossroad could accommodate an additional interchange, no "practicable alternative" existed that could meet this purpose. (Doc. 52-3, pp. 1–2); 40 C.F.R. § 230.10 ("An alternative is practicable if it is available and capable of being done after taking into consideration . . . logistics in light of overall project purposes."). As a result, Plaintiff has not carried its burden to demonstrate that the ACOE acted arbitrarily and capriciously by failing to consider "off-site alternatives." *Fla. Clean Water Network, Inc. v. Grosskruger*, 587 F. Supp. 2d 1236, 1243 (M.D. Fla. 2008) (citing *Louisiana Wildlife Fed'n, Inc. v. York*, 761 F.2d 1044, 1048 (5th Cir.1985) (holding that ACOE has a "duty" to consider permit applicant's purpose))).

## IV.    CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Preliminary Injunction (Doc. 44) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on January 22, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties