**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**THE SWEETWATER**
**COALITION OF VOLUSIA**
**COUNTY INC.,**

         **Plaintiff,**

**v.**                              **Case No: 6:25-cv-1695-PGB-LHP**

**JARED PERDUE and**
**BRANDON BOWMAN,**

         **Defendants.**

_____/

## ORDER

This cause is before the Court on Defendant Jared Perdue's ("**Defendant**")
Partial Motion to Dismiss (Doc. 58 (the "**Motion**")) Plaintiff The Sweetwater
Coalition of Volusia County Inc.'s ("**Plaintiff**") First Amended Complaint (Doc.
39, the "**Complaint**"). Plaintiff has filed a response in opposition (Doc. 64 (the
"**Response**")). After a review of the briefing, the Motion is due to be granted.

## I.    BACKGROUND

A full account of the factual background can be found in the Court's previous
Order on Plaintiff's Motion for Preliminary Injunction. (*See* Doc. 66).[1]

---

[1]   While the Court takes the allegations contained within the Amended Complaint as true, the
outcome of the Motion turns narrowly on the interpretation and application of statutory text.
*See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007). Thus, there is no need
for the Court to rehash the factual record as recounted in the order on Plaintiff's Motion for
Preliminary Injunction.

On November 21, 2025, Defendant filed the Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of Counts I and II of the Amended Complaint. (Doc. 58). Count I asserts that the Florida Department of Transportation, lead by Defendant, violated the Administrative Procedure Act ("**APA**") and the National Environmental Policy Act ("**NEPA**") by issuing a categorical exclusion for the subject interchange project in a manner contrary to applicable law. (*Id.* ¶¶ 52–65). Count II contends that Defendant violated the APA and NEPA by failing to complete a timely and unified federal review, as is allegedly required by statute. (*Id.* ¶¶ 66–73). In the Motion, Defendant asserts that Count I is time-barred, while Count II relies upon a statute without retroactive effect enacted after the relevant conduct. (Doc. 58, pp. 3–9). Plaintiff filed its response in opposition on December 11, 2025. (Doc. 64). The matter is now ripe for review.

## II.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must view the complaint in the light most

favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

## III.    DISCUSSION

The Motion is due to be granted, as neither Counts I nor II state a claim upon which relief can be granted.

### A.    Count I

In Count I of the Amended Complaint, Plaintiff claims that the Defendant's January 26, 2021 decision to classify the interchange project as "a Type 2

Categorical Exclusion [("**CE**")]" violates NEPA.[2] (Doc. 39, ¶¶ 52–65). Plaintiff's cause of action arises under § 704 of the APA, which permits challenges to only "final agency action[s] for which there is no other adequate remedy in a court" except "to the extent that statutes preclude judicial review[.]" 5 U.S.C. §§ 704, 701. In response, Defendant asserts that this claim is time-barred by 23 U.S.C. § 139(l)(1), which provides that "a claim arising under Federal law seeking judicial review of a permit, license, or approval issued by a Federal agency for a highway . . . shall be barred unless it is filed within 150 days after publication of a notice in the Federal Register announcing that the permit, license, or approval is final[.]"

On February 26, 2021, the Federal Highway Administration published notice of the project's approval in the Federal Register and advised the public that a "claim seeking judicial review of the Federal Agency actions on the listed highway project will be barred unless the claim is filed on or before July 26, 2021." (Doc. 39, ¶ 53 (quoting Doc. 39-13, p. 2)). On November 9, 2021, pursuant to its duty under 23 C.F.R. § 771.129, Defendant issued a "re-evaluation form" to determine "whether or not the approved . . . CE designation remain[ed] valid for the requested Administration action. (*Id.* ¶ 62); (*see* Doc. 39-1). Defendant determined that the original CE determination remained valid. (*See* Doc. 39-1). Then, 1,501 days after

---

[2]    Crucially, Plaintiff does not appear to articulate a challenge to the November 9, 2021, re-evaluation itself. (*See* Doc. 39, ¶ 65); *see also Chan v. United States Dep't of Transp.*, 782 F. Supp. 3d 39, 54 (S.D.N.Y. 2025) (acknowledging that "violation[s] of NEPA through failure to supplement" is a distinct claim for relief). Accordingly, the Court need not address whether any challenge to the re-evaluation is time-barred.

the original CE determination, Plaintiff filed this action on September 3, 2025. (Doc. 1).

Plaintiff asserts that neither the November 9, 2021, re-evaluation nor the underlying January 26, 2021, CE determination constitutes final agency actions under the APA. (Doc. 64, pp. 6–13). Instead, Plaintiff argues that Defendant's actions were not "final" until July 29, 2025, when the Army Corps of Engineers ("**ACOE**") "issued its Environmental Assessment and Decision for the" highway project. (*Id.*). Thus, § 139(l)(1)'s 150-day limitations period does not apply. However, Plaintiff's view is without merit for several reasons.

First, Plaintiff's reliance on *Bennett v. Spear* for the proposition that the CE determination was not final agency action is misplaced. (*Id.* at p. 8). Pursuant to *Bennett*,

> As a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decision making process, it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

However, Justice Scalia was careful to qualify *Bennett* because, "[a]s a general matter", it serves as a judicial framework for determining finality in the absence of a specific Congressional pronouncement. *Id.* Yet, where Congress has

5

spoken directly, *Bennett* is not instructive.[3] In fact, the APA itself contemplates that separate "statutes [may] preclude judicial review." 5 U.S.C. § 701.

In this case, Congress has labeled the CE determination as a final agency action. Critically, 23 U.S.C. § 139(l)(2) provides that "[t]he preparation of a supplemental environmental impact statement when required shall be considered **a separate final agency action**[.]" (emphasis added). The modifier "separate" must convey independent meaning. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought . . . to be so construed that . . . no clause, sentence, or word shall be superfluous, void, or insignificant" (quotations omitted)). Thus, Congress would have had no occasion to designate a supplementary environmental impact statement as a "a separate final agency action" unless the permits, licenses, and approvals contemplated by §

---

[3]  This is not to say that a CE determination does not satisfy *Bennett*. To the contrary, a CE determination 1) marks the consummation of the decision-making process, and 2) is a decision from which legal consequences flow. *Bennett*, 520 U.S. at 177–78. First, a CE is a definitive judgment that the project does not require further NEPA review. The mandatory re-evaluation pursuant to 23 C.F.R. § 771.129 does not undermine the finality of the CE determination because the agency is not redetermining the CE from scratch. Rather, the re-evaluation merely requires an agency to consider whether any changed circumstances have invalidated the determination already made. *See Darby v. Cisneros*, 509 U.S. 137, 152 (1993) (finding that internal reconsideration of a final agency action does not disrupt finality for purposes of the APA). Next, legal consequences flow from the CE determination. As the Court concludes in this Order, the CE determination triggers both the 150-day judicial review period and the re-evaluation obligation. 23 U.S.C. § 139(l); 23 C.F.R. § 771.129.

In this case, the *Bennett* analysis is largely redundant, as determining whether a CE satisfies Bennett's two prongs necessarily requires the same statutory interpretation that resolves the finality question directly. Indeed, Congress may label an action as final agency action even where *Bennett* is not satisfied. Because *Bennett* is a judicially manufactured gloss on § 704, Congress may modify or override it by statute, as § 139(l) does here. The only constraint on judicial review that Congress cannot eliminate is Article III's case and controversy requirement, which remains the outer boundary on judicial review of any Congressionally designated final agency action.

139(l)(1) were themselves understood to be final agency actions. One cannot be separate from a category that does not exist. Thus, Congress itself made the judgment that "a permit, license, or approval issued by a Federal agency for a highway . . . is final" upon publication in the Federal Register. 23 U.S.C. § 139(l)(1). This structure implies that these actions are not tentative or interlocutory, but *final*.

The Court must next determine whether a CE determination constitutes an "approval" sufficient to trigger § 139(l)(1). Indeed, the structure of § 139(l) implies that a CE determination is an "approval". An agency invoking a CE *must* conduct a re-evaluation. 23 C.F.R. § 771.129.[4] Because agencies must reevaluate their "approvals" and a CE determination must be reevaluated, a CE determination ***must*** constitute an approval.

It follows, then, that the CE determination is also a "final agency action". If a reevaluation results in the "preparation of a supplemental environmental impact statement", that supplemental report is "considered a separate final agency action." § 139(l)(2). The modifier "separate" necessarily presupposes a prior final agency action from which it is distinct. Because an agency that reconsiders its CE determination and prepares a supplemental environmental impact statement would, by the terms of the statute, be engaging in a "separate final agency action",

---

4    Importantly, 23 C.F.R. § 771.129 is the implementing regulation for 23 U.S.C. § 139(l)(2), which provides that "[t]he Secretary **shall** consider new information received after the close of a comment period[.]" 23 U.S.C. § 139(l)(2) (emphasis added).

the initial "final agency action" ***must*** have been the underlying CE determination itself. Therefore, a CE determination constitutes "final agency action".

Finally, the Court also must clarify that Congress used the term "final agency action" in § 139(l)(2) consistently with the APA because Congress specifically drafted NEPA with the APA in mind.[5] Importantly, "a reviewing court should not confine itself to examining a particular statutory provision in isolation." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000).[6] "A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme and fit, if possible, all parts into an harmonious whole[.]" *Id.* at 133 (quotations omitted). Crucially, "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *Id.* (quotations omitted). Critically, "NEPA claims must be brought under the APA[.]" *Karst Env't Educ. & Prot., Inc. v. E.P.A.*, 475

---

[5]   While 23 U.S.C. § 139(l) is not NEPA, it was specifically enacted to govern the NEPA process for transportation projects and thus must be read *in pari materia* with NEPA. *See generally* 23 U.S.C. § 139 (referencing NEPA on twenty-six occasions); Daniel R. Mandelker, *The National Environmental Policy Act: A Review of Its Experience and Problems*, 32 Wash. U. J.L. & Pol'y 293, 307 (2010) (describing § 139 as "revising the NEPA process for transportation projects").

[6]   *Brown & Williamson* held that the Food and Drug Administration lacked statutory authority to regulate certain tobacco products. 529 U.S. at 120. Later, this holding was superseded by the Family Smoking Prevention and Tobacco Control Act of 2009, PL 111-31, June 22, 2009, 123 Stat. 1776 (2009). However, the principles of statutory construction as articulated in *Brown & Williamson* have been repeatedly affirmed and utilized by courts. *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 320 (2014) (citing *Brown & Williamson* for the proposition that "words of a statute must be read in their context and with a view to their place in the overall statutory scheme"); *Mellouli v. Lynch*, 575 U.S. 798, 809 (2015) (same); *see also* H.R. REP. 111-58(II), 25, 2009 (indicating Congressional intent to supersede *Brown & Williamson's* result and not the Supreme Court's reasoning).

F.3d 1291, 1297 (D.C. Cir. 2007); *see also Lakes & Parks All. of Minneapolis v. Fed. Transit Admin.*, 928 F.3d 759, 762 (8th Cir. 2019) ("expressly reject[ing] the viability of a NEPA cause of action outside of the APA framework"); *Noe v. Metro. Atlanta Rapid Transit Auth.*, 644 F.2d 434, 439 (5th Cir. 1981)[7] (noting that NEPA's "legislative history" points against Congress implying a private right of action). NEPA and the APA operate harmoniously, as Congress affirmatively chose to funnel NEPA challenges through the narrow path of the APA. *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 558 (1978) (discussing Congress's determination that "[t]he fundamental policy questions [addressed by NEPA are] appropriately resolved in Congress and in the state legislatures [and] are *not* subject to reexamination in the federal courts under the guise of judicial review of agency action."). Thus, when Congress enacted § 139(l)(1) to govern limitations on claims arising from federal transportation project approvals under NEPA, it used the term "final agency action" to intentionally trigger the APA.

Because the CE determination is an "approval" pursuant to § 139(l)(1), and such an approval is final agency action, § 139(l)(1)'s 150-day limitations period applies to the Federal Highway Administration's February 26, 2021, notice

---

[7]    The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

published in the Federal Register. Consequently, because Plaintiff filed this action

1,501 days after the original CE determination, Count I is time-barred.[8]

### B. Count II

In Count II of the Amended Complaint, Plaintiff claims that Defendant failed

to both complete a timely and unified federal review of the project and "produce

'one document' that comprises the NEPA review." (Doc. 39, ¶ 68 (quoting 42 U.S.C.

§ 4336a(b))). Defendant argues that 42 U.S.C. § 4336a(a)-(b)'s requirements were

added in 2023, nearly two years after the original CE determination and re-

evaluation, and thus have no retroactive effect. (Doc. 58, p. 7).

Indeed, § 4336a(a)–(b) was added by the Fiscal Responsibility Act of 2023

("**2023 NEPA Amendments**"), nearly two years after Defendant's CE

determination and re-evaluation. *See* Pub. L. No. 118-5, Div. C, Tit. III, § 321, 137

Stat. 38–39 (2023). "Plaintiff concedes that the 2023 NEPA [A]mendments

generally are not retroactive[.]" (Doc. 64, p. 14 (citing *Ritidian v. U.S. Dep't of the

Airforce*, 128 F.4th 1089, 1100 n.3 (9th Cir. 2025))). However, Plaintiff argues that

procedural rules ought to be applied retroactively because retroactive application

of a merely procedural rule does not prejudice either party. (*Id.*) Generally,

retroactive enforcement is disfavored because it requires a clear statement of

congress. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 264 (1994)

("[C]ongressional enactments . . . will not be construed to have retroactive effect

---

[8]   To the extent Plaintiff relies on the so-called "reopening doctrine", the Court rejects such
arguments. *See Biden v. Texas*, 597 U.S. 785, 810 n.8 (2022) (declining to adopt the reopening
doctrine).

unless their language requires this result" (quotations omitted)). However, "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Id.* at 275. The distinguishing factor between substantive and procedural amendments lies in whether the amendment "regulate[s] secondary rather than primary conduct[.]" *Id.*

Here, the 2023 NEPA Amendments are procedural in nature. The amendments do not impact *whether* or *why* an agency decides to pursue a project. Rather, the amendments regulate *how* a project receives approval. Nonetheless, the mere fact that a new rule is procedural does not mean that it applies to every case. *Id.* at 275 n.29. As the Supreme Court has made clear, procedural rules ought to only be applied retroactively "'insofar as [is] just and practicable.'" *Id.* (quoting Order Amending Federal Rules of Criminal Procedure, 495 U.S. 969 (1990)). In this case, application of the amendments retroactively would require Defendant to reinitiate the review process years after it has been completed and after construction has been ongoing for over ten months. That prospect is neither just nor practicable. Thus, the 2023 NEPA Amendments cannot apply retroactively to this case.

Plaintiff argues that, while the 2023 NEPA Amendments were not in effect at the time of Defendant's CE determination, they were in effect when the ACOE issued their permit. (Doc. 64, p. 15). Thus, Plaintiff argues that the amendments should apply to the *entire* process between Defendant and the ACOE. However, it

11

takes two to tango. By the time the amendments took effect, Defendant had no remaining duty to act. The amendments, which require agencies to jointly act, presupposes that each agencies' deliberative processes remain open and capable of coordination. Thus, Plaintiff's argument does not overcome the presumption against retroactivity.

Finally, Plaintiff requests that, should the Court dismiss Count II, it be granted leave to amend its complaint to add a new claim under a different statute operative at the time of Defendant's CE determination. (*Id.* at p. 15–16). A request to "amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (quotations omitted). The Plaintiff in this case resembles the plaintiff in *Carruthers v. BSA Advert., Inc.* There, the Eleventh Circuit affirmed a denial of a plaintiff's request to add claims to her complaint without offering explanation as to why the desired claim was not nor could not have been added in previous amendments. 357 F.3d 1213, 1218 (11th Cir. 2004). Like the plaintiff in *Carruthers*, Plaintiff has offered no explanation as to why it could not have added its newly desired claim "in [its] original complaint or in [its] first amended complaint." *Id.* Thus, this "lack of explanation for [its] delayed amendment forecloses a finding that justice requires it." *Marine Mgmt. Servs., Inc. v. Slater*, No. 2:23-CV-00632-AMM, 2025 WL 296592, at *4 (N.D. Ala. Jan. 24, 2025). Nor does Plaintiff "suggest that new facts have been uncovered or

unknown circumstances have been discovered." *Id.* at *5. Thus, Plaintiff's delay is undue. Accordingly, the Court does not find amendment appropriate at this time.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (Doc. 58) is **GRANTED**. Counts I and II of the Amended Complaint (Doc. 39) are **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to terminate Defendant Jared Perdue as a party.

**DONE AND ORDERED** in Orlando, Florida on June 12, 2026

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

13